UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

AXCESS MEDICAL CLINIC, INC.;
KENNETH CHARLES KNIGHT; AND
FITZHUGH LEE NEAL, JR., M.D.                                    PLAINTIFFS

V.                                      CIVIL ACTION NO. 3:14CV112 DPJ-FKB

S. RANDALL EASTERLING, M.D.;
VIRGINIA CRAWFORD, M.D.; LARRY B. AYCOCK, M.D.;
AND H. VANN CRAIG, M.D.                                          DEFENDANTS

ORDER

This § 1983 action is before the Court on Defendants' motion for summary judgment [50]

pursuant to Federal Rule of Civil Procedure 56.  Defendants Dr. S. Randall Easterling, Dr.

Virginia Crawford, and Dr. Larry B. Aycock are three members of the nine-member Executive

Board of the Mississippi State Board of Medical Licensure; Defendant Dr. H. Vann Craig serves

as the Executive Director.  Plaintiffs Axcess Medical Clinic, Inc. and its owners, Kenneth

Charles Knight and Dr. Fitzhugh Lee Neal, Jr., sued each Defendant in his or her individual

capacity under § 1983.  Plaintiffs contend that Defendants' conduct at a May 15, 2013 hearing

regarding Axcess's recertification as a pain-management clinic deprived Knight and Dr. Neal of

their constitutional rights.

In their motion, Defendants seek summary judgment as to all of Plaintiffs' claims based

on qualified immunity.  Plaintiffs have responded in opposition [53] and filed an alternative

motion for leave to conduct discovery under Rule 56(d) [54].  The Court, having considered the

memoranda and submissions of the parties, finds that Plaintiffs' motion for discovery pursuant to

Rule 56(d) should be denied and Defendants' motion should be granted in part but otherwise

denied without prejudice.

I.      Factual Background

        The dispute between these parties began in January 2012, when the Mississippi State

Board of Medical Licensure ("Board") passed a rule stating that pain-management clinics must

be owned by a licensed physician.  Previously, Plaintiff Kenneth C. Knight, who is not a

physician, owned Axcess clinic.  In order to comply, he sold a majority ownership in the clinic to

Plaintiff Dr. Fitzhugh Lee Neal, Jr., a licensed physician, in February 2012.  Under this set-up,

the Board certified Axcess as a pain-management clinic on February 28, 2012.  Am. Compl. [41]

¶ 24.  Axcess's certification as a pain-management clinic was to expire on June 30, 2012.  *Id.*  At

that time, the regulations did not require any specific medical training, only a license to practice

medicine in Mississippi   which Dr. Neal possessed.  Neal Aff. [53-1] at 2.

        A.      Recertification Process

        On June 18, 2012, Dr. Neal submitted an application for renewal of the clinic registration.

*Id.*  On August 3, 2012, the Board requested additional information related to Dr. Neal's training

and IRS tax forms indicating "proof of ownership."  Letter [53-4].  Counsel for Axcess provided

all available information in support of ownership, but explained that 2012 tax forms would not

be available until after December 31, 2012.  Letter [53-6].  Dr. Neal also provided the Board with

proof of his medical training, including his satisfaction of continuing medical education

("CME") requirements that met the rules in effect as of June 18, 2012.  Am. Compl. [41] ¶¶ 27,

28.  His training remained unchanged from the time the initial application was approved in

February 2012.  *Id.* ¶ 39.

        On October 11, 2012, the Board notified Dr. Neal that it had denied his application

because his training did not meet the Board's qualification requirements:

> The Medical Board has completed it's [sic] review of your application for pain clinic certificate.  After a thorough review of the documentation submitted, the Board has <u>denied</u> your application for a pain clinic.  The Board has determined that your field of training and expertise is not compatible with the *practice of chronic pain management*.
>
> If in the future you obtain training in the field of chronic pain management, you may resubmit your application for reconsideration.  It is recommended that you reduce the number of pain patients in your practice and refer them to the appropriate specialist/physician.

Letter [53-7] (emphasis in original).

Within one week, Dr. Neal emailed Defendant Easterling explaining his experience and qualifications.  Email [53-8].  In addition, counsel for Axcess wrote to Defendant Craig asking for clarification of the alleged deficiencies.  Letter [53-9].  When no response followed, Dr. Neal's counsel sent a second letter on December 20, 2012, providing twenty pages of documentation detailing Dr. Neal's qualifications, training, and experience in the field of pain management.  Letter [53-10].  Again, no response immediately followed.

Six months later, Dr. Neal received a letter dated April 24, 2013, in which the Board ordered him to appear before the executive committee on May 15, 2013, to "show cause" why the Board should not deny his renewal application.  The Board cited Dr. Neal's "failure to provide necessary documentation or submit a new application for reconsideration as requested by letter dated August 3, 2012" and asserted that his CME documentation "does not indicate emphasis in the area of pain management."  Letter [41-6].

When he arrived at the hearing, Dr. Neal executed an "Agreement to Appeal Informally Before Executive Committee by Current Licensee," agreeing that he understood "no disciplinary action will be taken without my express written consent" due to the informal nature of the

meeting.  *Id.* [41-7] (Agreement).  The agreement stated that Dr. Neal had the right to counsel

and further indicated his desire to have counsel present.  *Id.*  But when his attorney was delayed,

Dr. Neal claims Defendants forced him to go forward unrepresented.  Neal Aff. [53-1] ¶ 18.

During the meeting, Dr. Neal confirmed that he had been operating the clinic without

certification since June 30, 2012.  Board Minutes [50-2] at 3.  What transpired next, according to

Dr. Neal, was as follows:

> Dr. Easterling informed me that he and the other individual physicians named
> herein believed that I did not meet the training requirements and accused me of
> practicing pain management without the proper qualifications.  Dr. Easterling
> demanded repeatedly that I admit to such conduct.  I felt intimidated and harassed
> during the hearing through threat of revoking my license and refusal to certify
> Axcess.  As shown by the minutes of the meeting, the other physicians present
> joined in and agreed with Dr. Easterling's accusations and instructed me to
> immediately reduce the percentage of my pain management patients.

*Id.* ¶ 21.

The minutes confirm that Dr. Neal was "advised that he immediately reduce the

percentage of pain management patients" to a level that would not qualify Axcess as a pain-

management clinic.  Minutes [50-2] at 3.  But the minutes indicate that the demand was based on

the undisputed fact that Dr. Neal had been operating without certification for approximately ten

months.  *Id.*  The minutes do not expressly address questions regarding qualifications, but they

were mentioned in the notice.  Regardless, there is no dispute that Dr. Neal was qualified under

the then-existing rules.

As for the ownership issue, the parties agree Dr. Neal announced during the hearing that

he brought the requested tax records.  Defendants claim, however, that he did not leave them

with the Board while Dr. Neal insists that he was not asked to do so. *Compare* Neal Aff. [53-1] ¶ 19 *with* Board Minutes [50-2] at 3.

The minutes conclude by stating that Dr. Neal "would be notified of the Board's decision," and a motion then passed to "send Dr. Neal a letter advising that he has not been issued a certificate to practice as pain management yet he continues to do so." Minutes [50-2] at 3. He was "to be reminded" to immediately reduce his pain-management patients. That letter, which Craig sent on May 20, 2013, stated:

> During the meeting, you advised that you had your federal tax return for the clinic; however, you have failed to provide a copy to the Board. The Board found that you still have not provided all of the requested documentation to be issued a certificate to operate your practice as pain management, yet you continue to practice as such. You were instructed by the Executive Committee to immediately reduce the percentage of pain management patients that receive prescriptions for controlled medications to be below 50%. Your practice will be monitored for compliance until all of the necessary documentation has been provided and your application for you to operate a pain management practice is approved.

May 20, 2013 Letter [53-13] at 1.

Because 100 percent of the clinics' patients were pain-management patients, Plaintiffs assert that these actions forced Axcess to close its doors on May 15, "under threat from the Individual Defendants to revoke Dr. Neal's license." *Id.* But on May 31, 2013, Axcess submitted the requested tax forms, *id.* ¶ 32, and the clinic was recertified as a pain-management clinic on June 26, 2013. An internal document from the Board regarding the certification dated June 12, 2013, bears the comment "OK-since we have no training regs." Renewal [53-15].

Three months later, on September 24, 2013, the Board instituted amendments to its rules, including adding specific training requirements for physicians practicing pain management.

5

These training requirements became effective July 1, 2014.  Plaintiffs contend that this history shows the Board wrongfully imposed the yet-to-be-applicable requirements in 2012 and 2013 when it challenged Dr. Neal's training and qualifications.

B.      Plaintiffs' Lawsuit

Plaintiffs initially filed this suit in state court on January 3, 2014, bringing claims under state law and § 1983 against the Board generally related to Plaintiffs' opposition to the newly adopted rules.  The Board removed the action to this Court on February 10, 2014.  As outlined below, the procedural history that followed is relevant to the present motions.

On March 20, 2014, the Plaintiffs filed their First Amended Complaint [9], adding individual and official capacity claims against the Individual Defendants.  Around this time, the Board and the Individual Defendants sought dismissal on a variety of grounds.  Significantly, Plaintiffs' response to one of those motions clarified the scope of their claims against the Individual Defendants:  "Plaintiffs' claims against the Individual Defendants are based upon the conduct of each both during and subsequent to the 'informal hearing' that occurred on May 15, 2013."  Pls.' Mem. [31] at 18.

On June 26, 2014, the Court granted much of the Individual Defendants' motion for judgment on the pleadings as unopposed, but denied the motion as it related to individual-capacity claims stemming from the May 15, 2013 hearing because the Individual Defendants had not specifically addressed those claims in their memoranda.  *See* June 26, 2014 Order [39] at 3  4.  The Court did, however, note that the First Amended Complaint lacked specificity and therefore granted leave to amend.  *Id.* at 4.  On July 18, 2014,  Plaintiffs filed a Second Amended Complaint ("SAC"), which purports to conform to the Court's Order [39].

6

While the SAC is not broken down into specific causes of action or claims, it suggests claims based on substantive and procedural due process as well as equal protection. The Individual Defendants have now moved for summary judgment [50]. Plaintiffs responded in opposition [53] and alternatively moved for leave to conduct discovery as to the equal-protection claim pursuant to Rule 56(d) [54]. The Court has personal and subject-matter jurisdiction.

II.     Standards

    A.     Rule 56(a)

Summary judgment is warranted under Rule 56(a) when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324. Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). In reviewing the evidence, factual controversies are to be resolved in favor

of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075.  When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150 (2000).

B.    Rule 56(d)

Though a party may seek summary judgment at anytime, Rule 56(d)(1) permits the Court to defer considering a summary-judgment motion or deny it when a nonmovant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition" to the motion.  When this occurs, the Court may "allow time to obtain affidavits or declarations or to take [additional] discovery" or enter appropriate orders.  Fed. R. Civ. P. 56(d)(2)(3).

The decision to grant or deny a Rule 56(d) motion is within the sound discretion of the Court.  *Am. Family Life Assurance Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013).  But Rule 56(d) motions are "'broadly favored and should be liberally granted' because the rule is designed to 'safeguard non-moving parties from summary judgment motions that they cannot adequately oppose.'"  *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010) (quoting *Culwell v. City of Fort Worth*, 468 F.3d 868, 871 (5th Cir. 2006)).

Despite the broad policy in favor of discovery, Rule 56(d) "may not be invoked by the mere assertion that discovery is incomplete; the opposing party must demonstrate how the additional time will enable him to rebut the movant's allegations of no genuine issue of material fact."  *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 28 F.3d 1388, 1396 (5th Cir. 1994) (quotation marks and citation omitted); *see also Washington v. Allstate Ins.*

8

*Co.*, 901 F.2d 1281, 1285 (5th Cir. 1990) (affirming denial of Rule 56(d) motion and noting that "nonmovant may not simply rely on vague assertions that discovery will produce needed, but unspecified, facts"); *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir.1986) (same).

In the present case, Plaintiffs expressly seek discovery regarding their equal-protection claim, explaining what they wish to discover.  But they also seek discovery generally if the Court finds their summary-judgment response insufficient.  The former request provides sufficient detail; the latter does not.

III.    Analysis

As noted, "Plaintiffs' claims against the Individual Defendants are based upon the conduct of each both during and subsequent to the 'informal hearing' that occurred on May 15, 2013."  Pls.' Mem. [31] at 18.  Based on that conduct, the SAC appears to assert claims premised on the denial of:  (1) equal protection; (2) substantive and procedural due process related to lost business; and (3) procedural due process related to damage to Plaintiffs' reputation.  The Court will address each claim separately.

A.    Equal-Protection Claim

Plaintiffs have not alleged that they are members of any protected class, so their equal-protection claim tracks the class-of-one theory.  To succeed, they "must establish (1) [they were] intentionally treated differently from others similarly situated and (2) there was no rational basis for any such difference."  *Wilson v. Birnberg*, 667 F.3d 591, 599 (5th Cir. 2012) (internal quotation marks omitted).  Determining whether a comparator is similarly situated requires consideration of "the full variety of factors that an objectively reasonable . . . decisionmaker

would have found relevant in making the challenged decision." *Lindquist v. City of Pasadena, Tex.*, 669 F.3d 225, 234 (5th Cir. 2012) (citation and internal quotation marks omitted).

As Defendants observe, Plaintiffs have never identified a similarly-situated comparator that was treated more favorably. Plaintiffs concede as much, but ask for leave to conduct discovery to prove their claim. They state: "Plaintiffs, upon information and belief, have reason to believe that in fact they were treated differently from other similarly-situated pain clinics and/or that Dr. Neal was treated differently from similarly-situated physicians but must be able to conduct discovery in order to clearly establish this claim." Pls.' Mot. [54] at 2.

In most cases, a properly supported Rule 56(d) motion filed before discovery would likely succeed. But here, Defendants have invoked qualified immunity, and "[o]ne of the most salient benefits of qualified immunity is protection from pretrial discovery . . . ." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) (citation omitted). This raises the threshold question of whether Defendants can invoke the defense. Plaintiffs say they cannot because Board members engage in purely ministerial duties for which qualified immunity offers no protection. *See* Pls.' Mem. [55] at 11 12.

### 1.    Ministerial-Duty Exception

"[T]he so-called 'ministerial duty' exception to qualified immunity is extremely narrow in scope." *Gagne v. City of Galveston*, 805 F.2d 558, 560 (5th Cir. 1986), *cert. denied*, 483 U.S. 1021 (1987) (quoting *Davis v. Scherer*, 104 S. Ct. 3012, 3021 n.14 (1984)). It applies when two requirements are met:

> First, "[a] law that fails to specify the *precise* action that the official *must* take in *each* instance creates only discretionary authority." [quoting *Davis*, 104 S. Ct. at 3021 n.14 (citation omitted)]. Thus, if an official is required to exercise his

> judgment, even if rarely or to a small degree, the Court would apparently not find the official's duty to be ministerial in nature.  Second, and perhaps more important, the *Davis* Court stressed that the breach of a ministerial duty "would forfeit official immunity only if that breach *itself* gave rise to the . . . cause of action for damages . . . [so that the plaintiff] is entitled to damages *simply* because the regulation was violated."  *Id.* (emphasis added) (citation omitted).

*Id.*  As to the second prong, "[n]either federal nor state officials lose their immunity by violating

the clear command of a statute or regulation    of federal or of state law    unless *that statute or*

*regulation* provides the basis for the cause of action sued upon."  *Davis*, at 3020 n.12 (emphasis

added).

> Thus allegations about the breach of a statute or regulation are simply irrelevant to the question of an official's eligibility for qualified immunity in a suit over the deprivation of a constitutional right.  This question must be answered solely by an inquiry into whether the constitutional right at issue was clearly established at the time of the events in question.

*Gagne*, 805 F.2d at 560.[1]

In the present case, Plaintiffs point to regulations that establish requirements for

certification and other Board functions.  But the Board exercises some degree of judgement, even

if small and rare, in dealing with compliance- and application-related issues.  Moreover,

Plaintiffs' claims before the Court relate to constitutional violations, rather than claims based on

violation of state law.  *Id.*  In other words, their claims in this case are federal in nature and not

premised on alleged state-law violations.  *See Lizotte v. Leblanc*, 456 F. App'x 511, 513 (5th Cir.

2012) (finding violation of prison regulations dictating defendant's work would not eliminate

qualified immunity).  Accordingly, Defendants may invoke qualified immunity.

---

[1]Debate exists over whether the exception is now "dead letter."  *See, e.g.*, *Vicari v. Ysleta Indep. Sch. Dist.*, 546 F. Supp. 2d 387, 422 (W.D. Tex. 2008) (collecting cases).

11

2.      Request for Discovery

Because qualified immunity protects an official not only from liability but also from suit, the Fifth Circuit has adopted a careful procedure to determine whether discovery should be allowed:

> [A] district court must first find that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity. . . .  Thus, a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity. *After* the district court finds a plaintiff has so pled, if the court remains unable to rule on the immunity defense without further clarification of the facts, it may issue a discovery order narrowly tailored to uncover only those facts needed to rule on the immunity claim.

*Backe*, 691 F.3d at 648 (emphasis added) (citation and internal quotation marks omitted).  The Court must therefore start with the pleadings.

The pleading standards for qualified immunity are often referred to as "heightened," but they essentially track the *Iqbal*/*Twombly* standard applicable to all Rule 12(b)(6) motions to dismiss.  *See Cox v. Kaelin*, 577 F. App'x 306, 313 (5th Cir. 2014) (noting that standards are not "heightened"); *Backe*, 691 F.3d at 648 ("[A] plaintiff must 'state a claim for relief that is plausible on its face'   excluding statements that are 'no more than conclusions' which are 'not entitled to the assumption of truth'" (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678  79 (2009)). *Iqbal* itself states that discovery in the qualified-immunity context should not be sanctioned   even if limited in scope   if the pleadings are not sufficient.  556 U.S. at 686 ("Because respondent's complaint is deficient under Rule 8, he is not entitled to discovery, cabined or otherwise.").

So the final question is whether the class-of-one equal-protection claim satisfies pleading requirements.  According to the Fifth Circuit and other courts, plaintiffs asserting equal-protection claims must plead more than the conclusory statement that they were treated less favorably than someone else   they must identify the alleged comparator and provide facts.  *See Bonner v. Alford*, 594 F. App'x 266, 267 (5th Cir. 2015) ("Bonner failed to state a 'class of one' equal protection claim because his allegations did not identify any similarly situated prisoners"); *Robinson v. Ely*, 547 F. App'x 628, 629 (5th Cir. 2013) ("Robinson failed to state a 'class of one' equal protection claim because his allegations did not identify any similarly situated prisoners"); *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1220 (10th Cir. 2011) ("[A]fter *Twombly* and *Iqbal,* it is insufficient to simply allege that other, unidentified properties have 'comparable' or 'similar' conditions   the claim must be supported by specific facts plausibly suggesting the conditions on the properties and the properties themselves are similar in all material respects."); *S.N.B. v. Pearland Indep. Sch. Dist.*, No. 3:13-CV-441, 2014 WL 2207864, at *10 (S.D. Tex. May 28, 2014) (Costa, J.) (denying motion to amend class-of-one claim on futility grounds because proposed amended complaint failed to identify comparators); *Jingping Xu v. Univ. of Tex. MD Anderson Cancer Ctr.*, 854 F. Supp. 2d 430, 442  43 (S.D. Tex. 2012) ("Plaintiff fails to identify specifics about how other employees or former employees were similarly situated.").

In the present case, Plaintiffs have merely stated   "upon information and belief"   that they were treated less favorably.  Pls.' Mot. [54] at 2.  They have not, however, offered any comparators who likewise went before the Board under substantially similar circumstances and were treated more favorably.  Plaintiffs have therefore failed to "plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has

alleged and that defeat a qualified immunity defense with equal specificity." *Backe*, 691 F.3d at 648; *see also Iqbal*, 556 U.S. at 686.  And as such, discovery is denied and Defendants' motion for summary judgment is granted as to the equal-protection claim.

> B.  Procedural-Due-Process Reputation Claim

Plaintiffs brought a separate procedural-due-process claim based on damage to their reputations.  Defendants offered a host of arguments for dismissal, including the observation that the alleged statement was never published.  Defs.' Mem. [51] at 25  27.  Plaintiffs never substantively responded.  The claims are therefore deemed abandoned.  *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) ("[Plaintiff's] failure to pursue this claim beyond [the] complaint constituted abandonment."); *see also Riddell v. Howmedica Osteonics Corp.*, No. 3:14cv705  DPJ  FKB, 2015 WL 5167039, at *9 (S.D. Miss. Sept. 3, 2015) (citing *Pernell v. City of Columbus*, No. 1:08CV0040  DD, 2010 WL 1737638, at *4 (N.D. Miss. Apr. 28, 2010)).

> C.  Due-Process Claims

The Court has admittedly struggled with this portion of the case.  First, Plaintiffs have limited their claims against Defendants to the "conduct of each [Individual Defendant] both during and subsequent to the 'informal hearing' that occurred on May 15, 2013."  Pls.' Mem. [31] at 18.  So much of the history, including the Board's initial denial of recertification in October 2012, is not before the Court.  This makes it somewhat difficult to determine what facts and allegations relate to the May 15, 2013 hearing.  Indeed, it seems that the parties remain somewhat unsure as to what is in issue.  Second, some of the record evidence is missing pages and is obviously incomplete.  *See* Neal Aff. [53-1].  Third, while the SAC mentions both

substantive and procedural due process, it is not apparent whether Plaintiffs continue to pursue the substantive-due-process aspect of the claim   their summary-judgment response does not use the term.  And finally, as for the procedural-due-process claim, the Court is not yet convinced that Plaintiffs have failed to create a question of fact.  Though the briefs were generally well done, certain issues   including some raised in reply   need additional attention, or at least better framing.  In this posture, the Court is reluctant to decide these issues at this time.

The Court therefore concludes that the most appropriate step would be to meet with the parties to provide better guidance and expedite resolution.  Accordingly, the Court denies this portion of the motion without prejudice.  The parties are instructed to contact Courtroom Deputy Shone Powell to set this case for an in-chambers status conference with the undersigned at the earliest available date.  The case will remain stayed in the interim.

IV.    Conclusion

The Court has considered all arguments.  Those not addressed would not change the results.  For the foregoing reasons, Defendants' motion for summary judgment [50] is granted as to the equal-protection claim and the due-process claim related to reputation injuries.  The motion [50] is denied without prejudice as to the remaining due-process claims, and the Court will give the parties guidance on those issues at an in-chambers status conference.  Plaintiffs' motion for discovery [54] is denied.

**SO ORDERED AND ADJUDGED** this the 24th day of September, 2015.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE